USCA1 Opinion

 

 July 10, 1992 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT ____________________ No. 91-2256 ROBERT A. ARONSON, Plaintiff, Appellant, v. INTERNAL REVENUE SERVICE, ET AL., Defendants, Appellees. __________ No. 91-2257 ROBERT A. ARONSON, Plaintiff, Appellee, v. INTERNAL REVENUE SERVICE, ET AL., Defendants, Appellants. ____________________ APPEALS FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Douglas P. Woodlock, U.S. District Judge] ___________________ ____________________ Before Breyer, Chief Judge, ___________ Cyr, Circuit Judge, _____________ Boyle,* District Judge. ______________ ____________________ Channing S. MacDonald with whom Richard W. Lubart was on brief ______________________ __________________ for Robert A. Aronson. Frank P. Cihlar, with whom James A. Bruton, Acting Assistant ________________ _________________ Attorney General, with whom Gary R. Allen, and Jonathan S. Cohen, ______________ __________________ Attorneys, Tax Division, Department of Justice, and Wayne A. Budd, ______________ United States Attorney, were on brief for the Internal Revenue Service et al. ____________________ -1- ____________________ _____________________ *Of the District of Rhode Island, sitting by designation. BREYER, Chief Judge. The government appeals a ____________ district court judgment requiring the Internal Revenue Service ("IRS") to provide Robert Aronson, a private tracer of lost taxpayers, with the last known street addresses of persons to whom the government owes tax refunds for the years 1981-87. The district court held that the Freedom of Information Act ("FOIA"), 5 U.S.C. 552, requires that disclosure. In our view, however, a different statute, a special tax statute that limits the disclosure of tax return information, permits the IRS not to disclose this information to private persons such as Aronson. 26 U.S.C. 6103(a), (m)(1). And, an exemption in the FOIA makes clear that this tax statute, not the FOIA's general disclosure provision, governs this case. 5 U.S.C. 552(b)(3). We reverse the district court's determination to the contrary. For similar reasons, we affirm the district court's related decision denying Aronson access to some different taxpayer information, namely taxpayer identification numbers. I Background __________ Robert Aronson is a lawyer who specializes in finding persons to whom the government owes money and, for a fee, helping them obtain the money that is their due. -3- 3 Insofar as he finds people whom the agency would not otherwise have found, Aronson performs a public service. Insofar as he finds and charges people whom the agency would have located on its own, his service is less beneficial. See Aronson v. Dep't of Hous. and Urban Dev., 822 F.2d 182, ___ _______ _____________________________ 183, 188 (1st Cir. 1987) (Department's "poor performance in locating" those owed money is a "public interest" factor favoring disclosure), later proceeding, 866 F.2d 1 (1st Cir. ________________ 1989). In May 1989, Aronson, invoking the FOIA, asked the IRS for "the entire file of undistributed income tax refunds for the tax years 1981 through and including 1987." Aronson wanted the name of each taxpayer due a refund, the last known street or mailing address, the taxpayer's identification number, and the amount of the refund due. The IRS had previously released names and partial addresses (cities, states, and zipcodes) to the press as part of its own efforts to find those taxpayers. It gave Aronson this same information. Aronson then brought this lawsuit to compel the IRS to give him the rest of the information. The district court, finding no genuine and material factual disputes, entered an order, on summary judgment, compelling the IRS to give Aronson the last known -4- 4 street addresses along with the names, cities and zipcodes ________________ already supplied. It denied the rest of Aronson's request. The IRS now appeals the district court's order requiring it to provide street addresses. Aronson appeals only the district court's decision not to require the IRS to give him ___ each taxpayer's identification number. We shall consider the IRS's appeal first, turning to Aronson's appeal in the final section of this opinion. II The Relevant Statutes _____________________ Two statutes set forth the law that governs this case. The first is the Freedom of Information Act. The second is a specific provision of the Internal Revenue Code that governs the confidentiality of taxpayer identity information. 1. The Freedom of Information Act. The FOIA ________________________________ requires government agencies to "make . . . promptly available" to any person, upon request, whatever "records" the agency possesses unless those "records" fall within any of nine listed exemptions. 5 U.S.C. 552(a)(3), (b). The third listed exemption in the statute ("Exemption 3"), relevant here, provides: (b) This section [i.e., the FOIA ____ disclosure requirement and procedures] -5- 5 does not apply to matters that are . . . ______________ (3) specifically exempted from disclosure by statute . . . , provided ________ that such statute (A) requires that the matters be withheld from the public in such a manner as to leave no discretion ______________ on the issue, or (B) establishes __ particular criteria for withholding or ____________________ __ refers to particular types of matters to ___________________________ be withheld. 5 U.S.C. 552(b)(3) (emphasis added). That is to say, the FOIA does not require an agency to disclose information if another statute requires the agency to withhold the information, as long as that other statute (1) gives the agency no discretion to disclose, or (2) establishes criteria for withholding, or (3) specifies particular types of information to be withheld. 2. The Tax Statute. Congress, as part of the Tax _______________ Reform Act of 1976, enacted a detailed statute governing the "[c]onfidentiality and disclosure of returns and return information." 26 U.S.C. 6103. This tax statute lays down a basic rule of confidentiality. It forbids the IRS to "disclose" any tax "return" or tax "return information." 26 U.S.C. 6103(a). It defines "return information" as including "a taxpayer's identity." 26 U.S.C. 6103(b)(2)(A). And, it defines "taxpayer identity" as the name of a person with respect to whom a return is filed, his mailing ___________ -6- 6 address, his taxpayer identifying _______ _____________________________ number, . . . or a combination thereof. ______ 26 U.S.C. 6103(b)(6) (emphasis added); see also Church of ________ _________ Scientology v. IRS, 484 U.S. 9, 10-11 (1987). It then sets ___________ ___ forth several narrowly drawn exceptions, defining specific circumstances in which the IRS may, or must, reveal some of this information. 26 U.S.C. 6103(c)-(o). One of these exceptions, relevant here, states: The Secretary may disclose taxpayer _______________________ identity information to the press and ________________________________________ other media for purposes of notifying ____________ persons entitled to tax refunds when the Secretary, after reasonable effort and lapse of time, has been unable to locate such persons. 26 U.S.C. 6103(m)(1) (emphasis added). III The Relevant Legal Questions ____________________________ The Supreme Court has held that a court, when examining a claim that FOIA Exemption 3 permits an agency to withhold particular requested data, must ask two questions. First, does the special statute (here, the tax statute, 26 U.S.C. 6103(a), (m)(1)) "constitute a statutory exemption to disclosure within the meaning of Exemption 3"? Second, is the requested data "included within" this special statute's "protection"? CIA v. Sims, 471 U.S. 159, 167 ___ ____ -7- 7 (1985); see also Baldrige v. Shapiro, 455 U.S. 345, 352-53 ________ ________ _______ (1982). These are the two questions before us. A The First Question __________________ The first question is whether or not the special tax statute is an "exempting statute." The answer is clear. The tax statute falls squarely within FOIA Exemption 3. Exceptions aside, the tax statute "requires that" return information "be withheld . . . in such a manner as to leave no discretion on the issue." 5 U.S.C. 552(b)(3)(A); see ___ also De Salvo v. IRS, 861 F.2d 1217, 1221 n.4 (10th Cir. ____ ________ ___ 1988) (26 U.S.C. 6103 is an Exemption 3(A) statute); Linsteadt v. IRS, 729 F.2d 998, 1000 (5th Cir. 1984) (same); _________ ___ Fruehauf Corp. v. IRS, 566 F.2d 574, 578 & n.6 (6th Cir. ______________ ___ 1977) (same). The relevant exception, read together with the rest of the statute, both "refers to particular types of ____ matters to be withheld" (namely, "taxpayer identity information") and "establishes particular criteria for ___ withholding" (namely, that the IRS may consider release only where it would help notify taxpayers of refunds due, and, even then, only to the media). 5 U.S.C. 552(b)(3)(B); see ___ also De Salvo, 861 F.2d at 1221 & n.4 (26 U.S.C. 6103, ____ ________ including exceptions, is an Exemption 3(B) statute); Grasso ______ -8- 8 v. IRS, 785 F.2d 70, 77 (3d Cir. 1986) (same); Chamberlain ___ ___________ v. Kurtz, 589 F.2d 827, 838-39 (5th Cir.) (same), cert. _____ _____ denied, 444 U.S. 842 (1979). Thus, we answer the first ______ question affirmatively. B The Second Question ___________________ The second question is whether the taxpayers' street addresses fall within the protection of the special tax statute. Aronson argues that they do not. He points to the exception in the tax statute that permits the IRS to _______ disclose "taxpayer identity information to the press and other media" to help find taxpayers owed refunds. And, he says that this "exception" requires the IRS to disclose that ________ information here. To win this argument, Aronson must convince us both (1) that he falls within the statute's term "press and other media" (for the statute permits disclosure only to them), and (2) that the IRS acted outside its permitted power in not granting disclosure. We do not see _________ how Aronson can make either of those showings. 1. The Standard of Review. Before turning to the ______________________ merits of Aronson's argument, we consider a conceptual question of administrative law, the answer to which will sometimes affect the outcome in a FOIA Exemption 3 case: To -9- 9 what extent should a court (reviewing an agency's decision not to disclose) defer, or give special weight, to the agency's (here, the IRS's) answers to the kinds of legal questions mentioned in the preceding paragraph, namely the question of statutory interpretation and that of abuse of discretion? Ordinarily, a court would give special weight to the agency's interpretation of the language of the statute (such as the words "press and other media") the agency administers, where the interpretative question (as here) involves a minor, interstitial matter, closely related to the daily administration of a complex statutory scheme. Chevron USA, Inc. v. Natural Resources Defense Council, ___________________ ____________________________________ Inc., 467 U.S. 837, 843-45 (1984); Mayburg v. Secretary of ____ _______ ____________ Health and Human Serv., 740 F.2d 100, 106 (1st Cir. 1984); ______________________ Constance v. Secretary of Health and Human Serv., 672 F.2d _________ ____________________________________ 990, 995-96 (1st Cir. 1982). A court normally would also give an administrative agency broad leeway in deciding whether or not to exercise the permissive authority a __________ statute grants. 5 U.S.C. 706(2)(A) (reversal if "arbitrary, capricious, an abuse of discretion"); Citizens ________ to Preserve Overton Park v. Volpe, 401 U.S. 402, 416 (1971) _________________________ _____ ("clear error of judgment" as standard under 706(2)(A) and -10- 10 provides only "narrow" review); 5 Kenneth C. Davis, Administrative Law Treatise 29:6 (2d ed. 1984). Where the application or interpretation of a FOIA Exemption 3 statute is at issue, however, one might ask whether a court should abandon this ordinary administrative law framework in light of FOIA's statement that a court, asked to order an agency to release information, "shall determine the matter de novo. . . ." 5 U.S.C. 552(a)(4)(B). The district court in this case believed this FOIA language required it to decide de novo (i.e., without _______ ____ giving the agency the leeway that administrative law ordinarily provides) whether the IRS properly interpreted and applied the tax statute. And, several other courts have thought the same. E.g., De Salvo, 861 F.2d at 1218-21; ____ ________ Church of Scientology v. IRS, 792 F.2d 146, 148-50 (D.C. ______________________ ___ Cir. 1986), aff'd 484 U.S. 9 (1987); Grasso, 785 F.2d at 73- _____ ______ 75; Long v. United States IRS, 742 F.2d 1173, 1177-79 & n.12 ____ _________________ (9th Cir. 1984); Linsteadt, 729 F.2d at 1003; Currie v. IRS, _________ ______ ___ 704 F.2d 523, 527-28 (11th Cir. 1983). In our view, however, ordinary, deferential principles of administrative law, not the FOIA's special, de __ novo principles, govern review of the IRS's interpretation ____ of this Exemption 3 statute and its application to the data -11- 11 at issue. For one thing, the language of the FOIA, in saying that the FOIA "does not apply to matters that are . . ______________ . specifically exempted from disclosure by statute . . . ," 5 U.S.C. 552(b)(3), suggests that how an Exemption 3 statute applies to data that arguably fall within its reach, and whether specific circumstances counsel disclosure to further the statute's aim, are legal questions normally governed by that Exemption 3 statute, not by the FOIA itself. For another thing, and more importantly, if courts were to use principles of FOIA de novo review to _______ decide how to interpret or to apply the exceptions in this special tax statute, they would risk distorting Congress's very different aims in enacting the two different statutes. See Cheek v. IRS, 703 F.2d 271, 271-72 (7th Cir. 1983) (per ___ _____ ___ curiam); King v. IRS, 688 F.2d 488, 495-96 (7th Cir. 1982); ____ ___ Zale Corp. v. IRS, 481 F. Supp. 486, 489 (D.D.C. 1979); cf. __________ ___ ___ Baldrige, 455 U.S. at 352-55; White v. IRS, 707 F.2d 897, ________ _____ ___ 900 (6th Cir. 1983). On the one hand, the FOIA strongly favors disclosure. Its very purpose is "'to open agency action to the light of public scrutiny.'" Dep't of Justice ________________ v. Reporters Comm. for Freedom of the Press, 489 U.S. 749, _________________________________________ 772 (1989) (quoting Dep't of Air Force v. Rose, 425 U.S. ___________________ ____ -12- 12 352, 372 (1976)); see also Dep't of Justice v. Tax Analysts, ________ ________________ ____________ 492 U.S. 136, 142 (1989). It permits every citizen, whether well, or badly, motivated, to obtain the information it makes public. It requires agencies to adhere to "'a general philosophy of full agency disclosure.'" Rose, 425 U.S. at ____ 360 (quoting S. Rep. No. 813, 89th Cong., 1st Sess. 3 (1965)). Its exemptions are narrowly drawn, in favor of disclosure. See, e.g., 5 U.S.C. 552(b)(6) (exemption ___ ____ where disclosure is "clearly unwarranted invasion of ____________________ personal privacy") (emphasis added). Its procedural provisions, such as de novo court review of agency decisions _______ not to disclose, 5 U.S.C. 552(a)(4)(B), further these purposes. And, courts have interpreted the disclosure provisions generously, in order to achieve the FOIA's basic aim: sunlight. E.g., Dep't of Justice v. Julian, 486 U.S. ____ ________________ ______ 1, 8 (1988); FBI v. Abramson, 456 U.S. 615, 630 (1982); NLRB ___ ________ ____ v. Robbins Tire and Rubber Co., 437 U.S. 214, 220-21 (1978); ___________________________ Rose, 425 U.S. at 361. ____ In the tax statute, however, Congress has decided that, with respect to tax returns, confidentiality, not sunlight, is the proper aim. Tax returns contain highly personal information that many taxpayers might wish not to have broadcast. Moreover, without clear taxpayer -13- 13 understanding that the government takes the strongest precautions to keep tax information confidential, taxpayers' confidence in the federal tax system might erode, with harmful consequences for a tax system that depends heavily on voluntary compliance. Church of Scientology v. IRS, 792 ______________________ ___ F.2d 153, 158-59 (D.C. Cir. 1986) (en banc), aff'd 484 U.S. _____ 9 (1987). Thus, the Senate Finance Committee, recommending the tax statute here at issue, pointed both to the "citizen's right to privacy" and to the "related impact of the disclosure upon the continuation of compliance with our country's tax system" as reasons for more tightly restricting disclosure. S. Rep. No. 938, 94th Cong., 2d Sess., pt. 1, 318 (1976), reprinted in 1976 U.S.C.C.A.N. ____________ 3439, 3747. It concluded that returns and return information should generally be treated as confidential and not subject to disclosure except in those limited situations delineated [in the exceptions]. Id.; see also H.R. Conf. Rep. No. 1515, 94th Cong., 2d Sess. ___ ________ 475, reprinted in 1976 U.S.C.C.A.N. 4118, 4180. ____________ If courts review the propriety of an agency's exercise of discretion authorized by a tax confidentiality _______________ statute, using the full array of presumptions and procedural mechanisms embodied in the FOIA disclosure statute, they are __________ -14- 14 unlikely properly to carry out Congress's confidentiality- protecting purpose. Applied to the agency's specific decisions and interpretations under "confidentiality" statutes, the disclosure statute's language, presumptions, and procedures favoring openness will threaten, in practice, to undermine the privacy-protecting, confidence-promoting objectives that led Congress to enact special confidentiality statutes, such as the tax statute before us. See 26 U.S.C. 6110 (procedures, more restrictive than ___ FOIA, for public inspection of IRS written determinations); Church of Scientology, 792 F.2d at 159. _____________________ Thus, in our view, once a court determines that the statute in question is an Exemption 3 statute, and that the information requested at least arguably falls within the statute, FOIA de novo review normally ends. See White, 707 _______ ___ _____ F.2d at 900-01; King, 688 F.2d at 494-95; Zale Corp., 481 F. ____ __________ Supp. at 489; see also Sims, 471 U.S. at 167-69; Baldrige, _________ ____ ________ 455 U.S. at 358-59; Ass'n of Retired R.R. Workers, Inc. v. ____________________________________ U.S. R.R. Retirement Bd., 830 F.2d 331, 335-37 (D.C. Cir. _________________________ 1987); Ryan v. Bureau of Alcohol, Tobacco and Firearms, 715 ____ _______________________________________ F.2d 644, 645-47 (D.C. Cir. 1983); Irons & Sears v. Dann, ______________ ____ 606 F.2d 1215, 1220-22 (D.C. Cir. 1979). Any further review -15- 15 must take place under more deferential, administrative law standards. 2. Applying the Standard. Applying ordinary (not _____________________ special, FOIA) administrative law principles of review, we must hold that Aronson does not have a legal right to force disclosure of taxpayers' street addresses. For one thing, the relevant statutory provision -- permitting the IRS to disclose "taxpayer identity information" for purposes of finding taxpayers owed refunds -- authorizes disclosure only "to the press and other media." 26 U.S.C. 6103(m)(1). Aronson concedes, as he must, that he is not a member of the press. Normally, one would think that the words "other media," unless used in some special sense, refer to radio, television, and the like, not to a private citizen who wishes to write letters to taxpayers. See, e.g., National ___ ____ ________ Sec. Archive v. Dep't of Defense, 880 F.2d 1381, 1386, 1387 _____________ ________________ (D.C. Cir. 1989) ("representative of the news media" refers, in FOIA, to those, including newspapers, television and radio, who "gather[] information" and turn it "into a distinct work, and distribute[] that work to an audience"), cert. denied, 494 U.S. 1029 (1990); cf. Tax Analysts v. _____________ ___ ____________ Dep't of Justice, 1992 U.S. App. LEXIS 12143, at *11 (D.C. ________________ Cir. June 2, 1992) (publisher of weekly tax magazine and -16- 16 creator of electronic database on tax law within FOIA "news media," "broadly" defined) (citing National Sec. Archive, ______________________ 880 F.2d at 1387). Even were there some lawful way of stretching the meaning of those words to cover Aronson's activity, we could not so interpret them here, where the agency charged with administering the tax statute interprets them as not including Aronson, for that interpretation is not "manifestly contrary to the statute." Chevron, 467 U.S. _______ at 844. For another thing, even were Aronson a member of the "media," the statute simply permits -- it does not _______ require -- the IRS to disclose "taxpayer identity _______ information." Of course, the IRS, in deciding whether or not to disclose, may not act in a manner that is "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. 706(2)(A). But, the decision to disclose or to withhold the street addresses obviously involves competing considerations -- the usefulness of an old street address in locating a taxpayer who has moved, the potential that disclosure will lead to disturbing whoever now lives at the old street address, aggravation of ordinary taxpayers' worry that other private citizens may obtain personal information about them from the IRS. Cf. Chevron, 467 U.S. at 844 (deference to ___ _______ -17- 17 administrative interpretation of statute that "reconcil[es] conflicting policies") (quoting United States v. Shimer, 367 _____________ ______ U.S. 374, 382 (1961)). Nothing in the record suggests that the IRS has balanced those considerations in an arbitrary way. We conclude that the IRS's decision to withhold the street addresses was lawful. We reverse the district court's order requiring their release. IV Aronson's Appeal ________________ Aronson appeals a different decision of the district court, a decision not to require the IRS to give ___ him a different item of "taxpayer identity information," namely, taxpayer identification numbers (usually the same as a taxpayer's social security number). The legal issues are the same as those just discussed. Indeed, the same, or greater, protection attaches to this information as to street addresses. See Int'l Bhd. of Elec. Workers Local ___ ___________________________________ Union No. 5 v. Dep't of Hous. and Urban Dev., 852 F.2d 87, ____________ ______________________________ 89 (3d Cir. 1988) (citizens have "strong privacy interest" in social security numbers, more than in "home addresses"). Thus, the same conclusion -- that the IRS need not release the information -- follows. -18- 18 The decision to compel release of taxpayers' street addresses is Reversed. ________ The decision not to compel release of taxpayer identification numbers is Affirmed. ________ -19- 19