**Charles MURPHY, Plaintiff,**

v.

**INTERNAL REVENUE SERVICE, Defendant.**

**No. CIV. 98–186 ACK.**

United States District Court,
D. Hawaii.

July 14, 1999.

Charles Murphy, Keaau, HI, pro se.

Michael Chun, Office of the United States Attorney, Honolulu, HI, R. Scott Clarke, U.S. Dept of Justice, Trial Attorney, Tax Division, Washington, DC, for United States of America, Internal Revenue Service, defendants.

### *ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT*

KAY, District Judge.

### *BACKGROUND*

On August 14, 1997, Internal Revenue Service ("IRS") Agent Daniel Keahey sent a letter to Plaintiff Charles Murphy ("Plaintiff") advising him that the IRS had received information that he was possibly involved in a fraudulent trust arrangement. On September 12, 1997, Plaintiff submitted a Freedom of Information Act ("FOIA") request to Agent Keahey's office seeking a variety of items specifically pertaining to the year 1997, including: (1) tax returns, "lists," or "statements;" (2) computerized "references" contained in all systems of records for any return, "list," or "statement" examined without Plaintiff's consent; IRS technical advice memoranda in connection with the examination of returns or return information pertaining to Plaintiff; "related charging policies, manuals, rules, and guidelines involving prosecutorial discretion of members categorized as National Trust System clients;" (5) memoranda, policies, manuals, rules, and guidelines developed by the IRS trust task forced assigned to National Trust System and its members; and (6) a copy of all memoranda and a copy of all checks drawn

upon the Treasury department and paid to William Jefferson Clinton or his assignees.

In March 1998, Plaintiff's request was forwarded to the Pacific–Northwest Region of the IRS, which determined that the IRS had no responsive information pertaining specifically to tax year 1997. However, because Plaintiff had attached a copy of the August 14, 1997 letter from Agent Keahey, the IRS determined that the files associated with Agent Keahey's examination would be responsive to the request. On October 1, 1998, the IRS, acting through the Department of Justice, released copies of all the documents in Agent Keahey's files (eighty-four pages total) associated with the Charles H. Murphy Family Trust ("CHM Family Trust") except for portions of two pages. These two pages form the basis of the instant motion.

Page 42 consists of a handwritten activity log pertaining to the examination of the CHM Family Trust. The portion of the page that the IRS is withholding contains a reference to a third party who Agent Keahey initially contacted and who he determined had no relationship with entities associated with the CHM Family Trust. The IRS is withholding the name of the third party pursuant to 5 U.S.C. § 552(b)(7)(C). Page 51 consists of Form 5345B, "Examination Request Master File," which contains a record of Agent Keahey's request for tax records of the CHM Family Trust and an unrelated third party. Information on the form pertaining to the third party includes a name, tax identification number, type of tax form, tax period requested, and the reason for the request. The IRS is withholding the information on page 51 pursuant to 5 U.S.C. § 552(b)(3), 26 U.S.C. § 6103(a), and 5 U.S.C. § 552(b)(7)(C).

## STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R.Civ.P. 56(c). The standard for summary adjudication is the same. *See State of Cal. v. Campbell*, 138 F.3d 772, 780 (9th Cir.

1998). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

In the context of a FOIA suit, summary judgment is available to the defendant when the agency proves that it has fully discharged its FOIA obligations after the underlying facts and the inferences to be drawn from them are construed in the light most favorable to the FOIA requester. *See Miller v. Department of State*, 779 F.2d 1378, 1382 (8th Cir.1985). Thus, the defendant agency must prove that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly exempt from the Act's inspection requirements." *Id.* at 1383. As summarized in *Zemansky v. United States Envtl. Protection Agency*:

> The agency must: demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents. Further, the issue to be resolved is not whether there might exist any other documents possibly responsive to the request, but rather whether the search for those documents was adequate. The adequacy of the search, in turn, is judged by a standard of reasonableness and depends, not surprisingly, upon the facts of each case. In demonstrating the adequacy of the search, the agency may rely upon reasonably detailed, nonconclusory affidavits submitted in good faith.

767 F.2d 569, 571 (9th Cir.1985) (internal quotation marks omitted). When the affidavits of agency officials are relied upon, they are entitled to a presumption of good faith and "cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1200 (D.C.Cir.1991).

## DISCUSSION

To support its contention that the documents are properly being withheld, the IRS has submitted the declaration of Deborah Lambert–Dean ("Lambert–Dean"), an IRS attorney assigned to the instant case, describing the information sought by Plaintiff and the efforts of the IRS to comply with Plaintiff's FOIA request. According to the sworn affidavit of Lambert–Dean, the IRS withheld a portion of page 42 (a handwritten log chronicling activity of the CHM Family Trust) that contains a reference to a third party who was initially contacted by Agent Keahey and determined by him to have no current relationship with entities associated with the CHM Family Trust. *See* Lambert–Dean Decl. at ¶ 14. With regard to page 51 (form 5345B "Examination Request Master File" that records Agent Keahey's request for tax records of two taxpayers, the CHM Family Trust and an unrelated third party), the IRS has refused to disclose potions of that page relating to the unidentified third party taxpayer because the information includes a name, tax identification number, type of form and tax period being requested, and the reason that the form is being requested.

The Court finds that the affidavit submitted in this case describes in sufficient detail the undisclosed materials. Furthermore, the Court finds that the affidavit adequately explains the reasons for refusing to disclose the disputed materials.

## I THE IRS IS PROPERLY WITHHOLDING INFORMATION THAT IS SPECIFICALLY EXEMPTED FROM DISCLOSURE BY STATUTE.

Under FOIA, information need not be disclosed if it is "specifically exempted from disclosure by statute." 5 U.S.C. § 552(b)(3). In the instant case, the Court notes that "[s]ection 6103 of the Internal Revenue Code lays down a general rule that 'returns' and 'return information' as defined therein shall be confidential." *Church of Scientology v. Internal Revenue Serv.*, 484 U.S. 9, 10, 108 S.Ct. 271, 98 L.Ed.2d 228 (1987).[1] Therefore, § 6103 falls within a clearly established exemption to the FOIA disclosure rules. *See Long v. Internal Revenue Serv.*, 825 F.2d 225, 229 (9th Cir.1987). As this Court has previously stated in *Tanoue v. Internal Revenue Service:*

> The Internal Revenue Code exempts many documents from disclosure under 26 U.S.C. § 6103(a). In particular, the statute states that a person's tax returns, and "return information" is confidential and cannot be released except under defined situations. Courts agree that § 6103 of the Internal Revenue Code is the sort of statute referred to by the FOIA in 5 U.S.C. § 552(b)(3). *DeSalvo v. Internal Revenue Service*, 861 F.2d 1217, 1219 (10th Cir.1988) (noting that the Third, Fifth, Ninth, Eleventh, and District of Columbia Circuits have all held that § 6103 applies as an exempting statute under FOIA). Accordingly, if § 6103 forbids the disclosure of material, it may not be produced in response to a request under the FOIA.

904 F.Supp. 1161, 1164 (D.Haw.1995). Accordingly, the Court finds that the portions of page 51 that are being withheld constitute "return information" that the IRS is prohibited by law from disclosing.

Plaintiff argues that he has a material interest in these documents and cites *Britt v. Internal Revenue Service*, 547 F.Supp.

---

1. Section 6103(b)(2) defines "return information" as follows:

> [A] taxpayer's identity, the nature, source, or amount of his income, payments, receipts, deductions, exemptions, credits, assets, liabilities, net worth, tax liability, tax withheld, deficiencies, overassessments, or tax payments, whether the taxpayer's return was, is being, or will be examined or subject to other investigation or processing, or any other data, received by, recorded by, prepared by, furnished to, or collected by the Secretary with respect to a return or with respect to the determination of the existence, or possible existence, of liability (or the amount thereof) of any person under this title for any tax, penalty, interest, fine, forfeiture, or other imposition, or offense
> . . . .

808 (D.D.C.1982) to support his argument that the requested information be disclosed. In *Britt,* the court emphasized that even if the disputed information constituted "return information" pursuant to 5 U.S.C. § 552(b)(3), that information would nonetheless be subject to disclosure if the party seeking such disclosure has a "material interest" in the information pursuant to 26 U.S.C. § 6103(e)(1). Section 6103(e)(1) lists the situations in which a party has a material interest such that disclosure is appropriate, such as in his own tax return. Because the statute does not establish a category for having a material interest in non-tax return information, this limited exception does not apply. Therefore, Plaintiff's argument that he has a material interest notwithstanding, the Court concludes that the requested information is barred from disclosure by 5 U.S.C. § 552(b)(3) in conjunction with 26 U.S.C. § 6103.

## II THE IRS IS PROPERLY WITHHOLDING INFORMATION THAT COULD REASONABLY BE EXPECTED TO CONSTITUTE AN UNWARRANTED INVASION OF PERSONAL PRIVACY.

The Court observes that another exception to FOIA expressly exempts "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information (C) could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). In light of this exemption, the Court concludes that the IRS has properly withheld information on pages 42 and 51 because disclosure could reasonably be expected to constitute an unwarranted invasion of personal privacy.

■ The threshold question in determining whether this exemption applies is whether the materials are records or information compiled for law enforcement purposes. The Court finds that both pages contain information compiled for law enforcement purposes. Specifically, page 42 contains the identity of a third party who was initially contacted and later determined to have no current relationship with the CHM Family Trust. Page 51 contains information on an IRS investigation of an unrelated third party. Thus, the Court finds that this information was compiled for law enforcement purposes because it was used by the IRS in its enforcement of the federal tax code. *See Church of Scientology Int'l v. Internal Revenue Serv.,* 995 F.2d 916, 919 (9th Cir.1993).

■ The Supreme Court has specified that courts must balance the private and public interests involved in applying the personal privacy exemptions under FOIA. *See United States Department of Justice v. Reporters Committee for Freedom of the Press,* 489 U.S. 749, 762, 109 S.Ct. 1468, 103 L.Ed.2d 774 (1989) (holding that individual's request for law enforcement records about a third party constituted an unwarranted invasion of privacy; the requested information did not shed light on the agency's performance of its duties). In the instant case, the Court concludes that the interest of privacy outweighs the public interest in disclosure with regard to pages 42 and 51.

There is a substantial privacy interest at stake in this case. The Court notes that the information contained in page 42, if disclosed, would reveal the identity of a third party who was initially contacted about his relationship with the CHM Family Trust and later determined to have no current relationship with the CHM Family Trust. With regard to page 51, the Court notes that it contains information about an investigation of an unrelated third party taxpayer. Conversely, the public interest in disclosure of this information is minimal. The Court notes that the information on pages 42 and 51 relates only to individual taxpayers and does not shed light on the agency's practices or procedures. Moreover, Plaintiff's mere assertion that he has a material interest in the information as the "master" of his case is unpersuasive, particularly in light of the fact that Plain-

tiff has failed to demonstrate how disclosure would serve the public interest.

In reaching the conclusion that interests of privacy predominate, the Court emphasizes that courts have overwhelmingly found a legitimate privacy interest that must be protected when records sought under FOIA would reveal the identities of private citizens or individuals who have provided information to law enforcement officials or whose identities appear in law enforcement records. *See, e.g., Church of Scientology Int'l v. Internal Revenue Serv.*, 995 F.2d 916, 920—21 (9th Cir.1993) (withholding identities of federal law enforcement officials reference in enforcement files); *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1205 (D.C.Cir.1991) (holding that SEC properly deleted names and addresses of third parties mentioned in witness interviews, of customers listed in stock records, and of persons in correspondence with the SEC); *White v. Internal Revenue Service*, 707 F.2d 897, 901 (6th Cir.1983) (holding that IRS reasonably withheld disclosure of identity of parties in documents or statements who had indicated a willingness to provide information because such disclosure would constitute an unwarranted invasion of privacy); *Feshbach v. SEC*, 5 F.Supp.2d 774, 785 (N.D.Cal.1997) (holding that SEC properly refused to disclose information identifying private individuals against whom it did not take action).

III  *THE IRS CONDUCTED A REASONABLE SEARCH TO ASCERTAIN THE EXISTENCE OF AND OBTAIN DOCUMENTS RESPONSIVE TO PLAINTIFF'S FOIA REQUEST.*

Although the issue is not specifically addressed in Plaintiff's Opposition, the Court must still determine whether the IRS conducted a reasonable search. *See, e.g., Citizens Comm. on Human Rights v. Food and Drug Admin.*, 45 F.3d 1325, 1328 (9th Cir.1995). In light of the detailed affidavit submitted on behalf of the IRS, the Court concludes that the IRS has conducted an adequate search reasonably calculated to uncover all relevant documents in its possession.

■  Specifically, the Court finds that the IRS conducted a reasonable search to find information relating to ¶ 8 of Plaintiff's request, which seeks a "copy of every IRS technical advice memoranda, described in 26 C.F.R. § 301.6110–2(f), which has been adopted by the district director in connection with the examination of the income tax return(s) and or tax return information which pertains to me." Lambert–Dean Decl. at ¶ 18. As Lambert–Dean explains, technical advice memoranda ("TAMs") are written statements issued by the IRS National Office to, and adopted by, a district director in connection with the examination of a taxpayer's return or consideration of a taxpayer's claim for refund or credit. A TAM generally recites the relevant facts, sets for the applicable law, and states a legal conclusion. In October 1998, Lambert–Dean had Wayne Thomas, chief of the technical services staff, conduct a search in the automated Technical Management Information System using the search terms "Murphy, Charles," "Murphey, Charles," and "CHM Family Trust." This search failed to reveal any TAM cases under any of these names. Because this database was designed to log all requests for advice, including advice that resulted in a TAM, the Court finds that the IRS conducted an adequate search.

■  Similarly, with regard to Plaintiff's request for a "copy of all charging policies, manuals, rules and guidelines involving prosecutorial discretion of members categorized as National Trust System clients" and a "copy of all memoranda, policies, manuals, rules and guidelines developed by the IRS trust task force assigned to National Trust System and its members categorized by the IRS such as the same policies, memoranda, manuals, rules and guidelines developed by the IRS for its 'Operation Phoenix' project," the Court finds that the IRS conducted a reasonable search in light of the fact that Plaintiff

gave no indication as to what types of files could possibly contain documents responsive to this request or where they might be located. Specifically, the Court notes that Lambert–Dean contacted Agent Keahey, who was responsible for the examination of certain allegedly fraudulent family trusts operating in Hawaii. Agent Keahey informed her that he was not familiar with any charging policies, manuals, rules or guidelines involving prosecutorial discretion by the IRS with respect to family trusts. Moreover, Agent Keahey informed her that he was not familiar with any entity known as the "National Trust System" or any of the other types of documents described in ¶¶ 9 and 10. As above, the Court finds that this constitutes an adequate search for responsive documents.

Finally, the Court notes that Plaintiff requested a "copy of all memoranda, and a copy of all checks, drawn upon the Treasury department and paid to William Jefferson Clinton, or his assignees, by the Treasury department." The Court finds that, to the extent any such documents exist, they would fall within the jurisdiction of the Department of the Treasury so that all requests for such information should be directed to that Department.

## CONCLUSION

For the foregoing reasons, the Court GRANTS the Government's Motion for Summary Judgment.

IT IS SO ORDERED.